***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with certain modifications concerning attendant care. Accordingly, the Full Commission modifies the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The Employee is Willie Bullock.
2. The Employer is Headway Corporate Staffing Services.
3. The Carrier on the risk is Atlantic Mutual Insurance Company.
4. The employee-employer relationship existed between the parties on the date of the accident.
5. The accidental injury occurred on April 26, 1999.
6. Plaintiff suffered a closed head injury on April 26, 1999.
7. Defendant-employer accepted this claim as compensable.
8. The parties are subject to the Workers' Compensation Act.
9. Plaintiff's average weekly wage is $312.00, which yields a compensation rate of $208.00 per week.
10. The depositions of Dr. Karen Smith and Dr. Donald Price are a part of the evidentiary record.
 ***********
Based on the evidence of record, the Full Commission finds as follows:
 FINDINGS OF FACTS
1. Plaintiff sustained a compensable injury by accident on April 25, 1999 when he was struck in the head with a piece of molding. Consequently, plaintiff was admitted to Pitt County Memorial Hospital and underwent a CT scan.
2. On April 26, 1999, while still in the hospital, plaintiff was evaluated by neurologist Dr. Donald Price who found post-concussive syndrome and related inappropriate social behavior but no clear history of a seizure at that time. However, plaintiff did experience seizures while admitted to the hospital. Thereafter, on May 10, 1999, plaintiff was again evaluated by Dr. Price for his injury and the seizures. Plaintiff underwent an MRI of his brain and laboratory tests which were essentially normal and was given Dilantin to prevent further seizures. On June 22, 1999, Dr. Price was still unclear of the exact cause of plaintiff's seizures but had ruled out causes other than the injury such as a brain tumor. Dr. Price indicated that head trauma could cause epilepsy. Dr. Price continued to treat plaintiff with anti-convulsants and restricted him from driving or operating heavy machinery.
3. On August 10, 1999, plaintiff was first seen by Dr. Karen Smith, a family practitioner, for his seizure disorder and for high blood pressure. At that time, plaintiff was on Dilantin for his seizures as recommended by Dr. Price. However, plaintiff developed a problem due to the level of Dilantin becoming too high resulting in plaintiff's hospitalization after he passed out and possibly had additional seizure activity. Therefore, Dr. Smith prescribed Tegretol for plaintiff's seizures instead of Dilantin. While hospitalized, plaintiff had episodes where he lacked awareness of his surroundings. Dr. Smith observed these episodes, which she felt, could pose a danger to plaintiff while driving or operating heavy machinery.
4. Considering plaintiff's history, which did not include prior seizure activity, Dr. Smith found that plaintiff's seizure disorder was related to his injury by accident. According to Dr. Smith, plaintiff's seizures could be triggered if he were to fall, have alterations in his blood pressure or take his medications inappropriately. Dr. Smith indicated that plaintiff is not capable of safely monitoring and administering his own medication.
5. On September 8, 2000, plaintiff requested that defendants pay for attendant care services being provided predominantly by his sister, Lena Bullock, as well as by other members of plaintiff's family.
6. According to Dr. Smith, plaintiff is not capable of keeping up with his doctor's appointments. Plaintiff's sister usually accompanies plaintiff and obtains all necessary information for plaintiff's care.
7. Since plaintiff is restricted from driving, plaintiff needs someone to shop for him and run errands for him.
8. Furthermore, plaintiff should not attempt to prepare food and is in need of someone to prepare his meals. In fact, plaintiff's sister indicated that since his injury, plaintiff has put food on the stove to cook and then simply forgot, which could have resulted in a fire, serious injury or death to plaintiff or others.
9. Plaintiff is required to take Tegretol to control his seizures and he must maintain it at a level between 4 and 12. If his Tegretol level falls below or rises above this level, it could trigger a seizure. In fact, the failure to properly time the taking of just one pill could trigger a seizure.
10. When plaintiff has seizures, he is likely to fall and injure himself. Falls during seizures can lead to bleeding, closed head injury, broken bones or death; plaintiff would be utterly helpless during these seizures.
11. Plaintiff's sister has the ability, temperament, and devotion to provide the unskilled care plaintiff requires. Furthermore, plaintiff's sister is a suitable, discreet person who is highly motivated to provide care for her brother. Plaintiff's sister's testimony is convincing on this point and Dr. Smith believes that plaintiff's sister can appropriately provide the required care. Further, Dr. Smith indicates that plaintiff would like for his sister to provide this care.
12. Plaintiff is in need of attendant care by an unskilled caregiver such as a sitter or chore-worker. Plaintiff's sister is well qualified to provide this care. However, another unskilled caregiver could also provide the required care, if necessary. Specifically, plaintiff is in need of assistance with his medications. Further, plaintiff is in need of help with meal preparation not only to regulate his blood pressure through a low salt diet but also due to the danger posed when operating the stove. Finally, as plaintiff is restricted from driving, plaintiff is also in need of someone to run errands for him. While he needs transportation to his medical appointments, plaintiff must be accompanied by someone like his sister who will understand and remember all the necessary details related during the medical appointments in order to appropriately apply the medical information while caring for plaintiff.
13. Plaintiff's attendant care by an unskilled caregiver is required for approximately 16 hours a day, seven days a week. Unfortunately, there is no evidence of record regarding the reasonable rate at which attendant care is paid to an unskilled worker or sitter in plaintiff's geographic location and to base the rate of pay on plaintiff's sister's current job with the City of Rocky Mount would be inappropriate and unreasonable.
14. Plaintiff's sister has taken the following certified courses: 911, various telecommunication courses certified by the state to use Division of Criminal Information machine, CPR, and First-Aid, and she currently earns $11.10 per hour working usually 40 hours per week for the City of Rocky Mount. She has benefits provided to her and has a career opportunity job she enjoys doing. Plaintiff's sister has continued working full-time since plaintiff's accident and provides care to plaintiff before and after work as well as on her lunch break. In addition, she takes time off of work when required for plaintiff's medical visits. During the time plaintiff's sister is working, other family members provide for plaintiff's care.
15. Plaintiff's sister believes that plaintiff is in need of attendant care and she is willing to provide attendant care for her brother on a 24-hour basis. She will cook for him, keep up with his medications and help him take care of his daily needs. She has been doing this and sharing the care with other family members since plaintiff returned from the hospital after the accident of April 25, 1999.
16. Plaintiff has been and continues to be unable to earn wages in any capacity since the April 25, 1999 injury. Defendants have paid temporary total disability benefits at a rate of $173.34 per week since the injury. However, plaintiff should have been paid his benefits at a rate of $208.00 per week.
17. Plaintiff requests that Dr. Karen Smith be approved as his primary treating physician. Plaintiff has received most of his recent care and medication management from Dr. Smith. Dr. Price who is a neurologist recommended that plaintiff have a local physician and referred plaintiff to Dr. Smith.
 ***********
Based on the foregoing stipulations and findings of facts, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff is entitled to have attendant care by an unskilled caregiver such as a sitter or chore worker from September 8, 2000, the date he requested such care.
2. Plaintiff is entitled to have his future care provided by his sister or other unskilled caregiver.
3. Plaintiff is entitled to 16 hours of attendant care per day, seven days a week, to be paid at the rate of pay of an unskilled caregiver in plaintiff's geographic location for all attendant care provided since September 8, 2000 and continuing.
4. As plaintiff has received temporary total disability at a rate lower than the rate to which he is entitled, plaintiff is entitled to receive back due benefits for each week since the date of his injury for the difference between the $208.00 to which he is entitled and the $173.34 per week he actually received. Thereafter, plaintiff is entitled to weekly compensation at the rate of $208.00 per week until further orders of this Commission.
5. Plaintiff is entitled to have reasonable medical treatment provided by Dr. Karen Smith for so long as such treatment tends to effect a cure, provide relief or lessen the period of plaintiff's disability. However, if plaintiff is in need of medical treatment or evaluation by a neurologist, plaintiff is entitled to have that care or evaluation provided by Dr. Price for so long as such treatment tends to effect a cure, provide relief or lessen the period of plaintiff's disability.
 ***********
Based on the foregoing findings of facts and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee, plaintiff shall receive a lump sum for past accrued unpaid temporary total disability compensation for the difference between the rate of the $208.00 to which he is entitled and the $173.34 per week he actually received. Thereafter, subject to a reasonable attorney's fee, plaintiff shall receive weekly benefits in the amount of $208.00 until plaintiff returns to work at the same or greater wages or until further order of the Commission.
2. A reasonable attorney's fee in the amount of twenty-five percent (25%) is hereby approved and shall be deducted from the lump sum due and paid directly to plaintiff's counsel. Thereafter, this attorney's fee shall be paid directly to plaintiff's counsel by way of every fourth weekly compensation check. Plaintiff's attorney is also entitled to twenty five percent (25%) of the attendant care benefits which have accrued as of the date of the filing of this Opinion and Award. Subsequent attendant care benefits will not be subject to an attorney fee.
3. Plaintiff's sister shall receive in one lump sum the accrued attendant care benefits beginning September 8, 2000 for care 16 hours a day, seven days a week, at the reasonable rate paid to unskilled caregivers in plaintiff's geographic location. Furthermore, plaintiff's sister or other appropriate unskilled caregiver shall receive future payments for plaintiff's care 16 hours a day, seven days a week, at the reasonable rate paid to unskilled caregivers in plaintiff's geographic location.
4. If the parties are unable to agree to the rate to be paid based on the reasonable rate paid to unskilled caregivers in plaintiff's geographic location, either party may request an expedited hearing on that issue.
5. Dr. Smith is hereby approved as one of plaintiff's treating physicians. Dr. Price shall remain as plaintiff's other treating physician and will continue to treat plaintiff and supervise plaintiff's care, as Dr. Price feels is appropriate.
6. Defendants shall pay the costs due the Commission.
This the ___ day of November 2002.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN